# EXHIBIT 11

CAUSE NO. DC-18-04914

| | | |
|---|---|---|
| BUSPATROL AMERICA, LLC | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| AMERICAN TRAFFIC SOLUTIONS, INC. | § | |
| | § | |
| | § | ___ JUDICIAL DISTRICT |
| Defendant. | § | |

## TEMPORARY RESTRAINING ORDER

On this day came on to be considered Plaintiff's Original Verified Petition and Application for Temporary Restraining Order and Injunctive Relief. After examining the pleadings and holding a hearing, the Court finds that the requirements for the issuance of a temporary restraining order have been met. More specifically, the Court finds that the evidence shows:

1. BusPatrol is the leader in the highly-competitive smart bus technology market. It has gained this leadership position through the competitive advantage it has as a result of its confidential and proprietary information, including BusPatrol's trade secrets. BusPatrol's confidential information and trade secrets include the proprietary equipment, firmware, and software that makes up the Busguard System and the ONGO transit system, designs, pricing, engineering plans, software structure and architecture, software code, engineering plans, know-how, technical knowledge of what processes work and what does not, lists of components needed to make the system work, processes, maintenance data, procedures, processes and instructions, operating systems, technical or engineering information, designs, plans, compilations, program devices, programs, methods, techniques, processes, and supplier information (collectively "BusPatrol's "Trade Secrets").

2. BusPatrol's Trade Secrets are used as a part of its safety program that is used to help keep children throughout the United States safe when riding school buses. BusPatrol works with cities, school districts and other governmental entities to deploy proprietary smart bus technology to reduce bus "stop arm" violations[1] through its "Bus

---

[1] A bus "stop arm" is the extendable stop sign on the side of the bus, which signals to motorists not to pass while the stop arm is extended.

1

6102168

Stop Arm Safety Program" ("BusPatrol's Safety Program"). The way BusPatrol's Safety Program works is that, at no cost to a school district, BusPatrol provides cameras both inside and outside of a school bus. The inside bus cameras record actions by the bus driver and students at all times. The outside bus cameras record stop arm violators who pass buses when the stop arm is extended and the red stop lights are flashing. This video is collected and sent through proprietary software to the cloud where the video is kept on BusPatrol's servers for use by law enforcement and/or the school district.

3.  Additionally, in the jurisdictions where it does business, BusPatrol provides reporting services and works with the relevant governing entity to send violators a ticket and process payments of such violations. BusPatrol and the relevant governmental entities then share in the revenue collected. This is a two-fold win for school districts because it allows them to increase the level of safety for school children riding buses without any additional cost, and also be paid to do so.

4.  In the summer of 2017, BusPatrol purchased certain confidential and proprietary technology from a group of companies affiliated with Force Multiplier Solutions, Inc. (collectively "FMS")[2]. The BusStop Technology forms, in part, BusPatrol's Trade Secrets. Prior to the transfer of ownership to BusPatrol, the BusStop Technology was protected as a trade secret by requiring the manufacturer of its proprietary products to only manufacture such products and systems for it and to enter into a non-disclosure agreement. Additionally, as products and systems were deployed throughout Texas, the school districts were required to sign agreements that contained non-disclosure provisions, and provided for the use of such technology only for a very limited use and purpose. The right to disclose or reverse engineer was not allowed. Both FMS and BusPatrol took reasonable steps to protect the BusStop Technology including but not limited to informing their employees the information was confidential, having employees, licensees, and vendors sign non-disclosure agreements, and limiting access to trade secrets to a "need-to-know" basis.

5.  Defendant ATS is BusPatrol's major competitor in the smart bus technology field. BusPatrol has been successful over Defendant because, due to BusPatrol's competitive technology advantage, it is able to equip the school buses with a seven (7) camera system, while Defendant's inferior technology only allows it to provide a five (5) camera system. BusPatrol also provides a higher quality video image than Defendant.

6.  Defendant, with full knowledge that such information was a Trade Secret of BusPatrol's, met with at least one of the school districts in Texas and improperly obtained access to BusPatrol's proprietary BusStop Technology, and thereafter had two fully-functioning BusGuard kits shipped to their office so that they could attempt to improperly reverse engineer them.

7.  Defendant representatives secretly met with Scott Peters and others in Dallas County and were improperly allowed to view a fully-rigged bus equipped with the

---

[2] The technology purchased from FMS is referred to hereinafter as the "BusStop Technology."

technology, cameras, cabling, and onboard computers; the internal components of the onboard computer, which included purpose-built components specially and proprietarily designed for the BusPatrol system; and the configuration of all of the components that make up the fully-functioning unit. Defendant also saw the unit's interface with FMS' back-end solution, which managed the rest of the program's lifecycle, including the processing and review of video evidence, law enforcement approval of the evidence, and the issuing of tickets and collection of proceeds. All of these functions run on BusPatrol's proprietary software. Simply put, Defendant improperly saw how BusPatrol's confidential technology, methods, and processes worked.

8. Thereafter, Defendant had two full units shipped to its offices for further analysis by its engineering department. One of these units used a proprietary customized Windows-based operating system, and one used a Linux-based operating system. Both operating systems include customized and proprietary firmware, which allows the onboard computer to interface with the hardware and back-end software. The secrets of the Linux-based system would have been of particular desire to Defendant, as its own offerings are Linux-based. With possession of the two units, Defendant now had unfettered access to BusPatrol's proprietary technology and back-end solutions at its facilities.

9. Additionally, Mr. Peters instructed others under his supervision, to answer multiple emails from Defendant regarding BusPatrol's proprietary and confidential BusStop Technology. Specifically such disclosures were made, at a minimum to Bruce Van Etten, an Infrastructure Architect who was tasked with reverse engineering Defendant's Trade Secrets, and Sujeet Karan, whom upon information is a software engineer for Defendant.

10. Defendant has also contacted BusPatrol's sole source manufacturer and attempted to convince it to violate its confidentiality obligations to BusPatrol and duplicate BusPatrol's proprietary BusGuard kits for Defendant. All of these activities occurred without BusPatrol's authorization or consent.

11. BusPatrol is entitled to the issuance of a temporary restraining order because it is necessary to protect and preserve the status quo pending a temporary injunction hearing. BusPatrol has demonstrated a likelihood of success on the merits of its claims against Defendant. Further, the balance of equities between Plaintiff and Defendant favors the issuance of a Temporary Restraining Order because Defendant has a statutory duty not to misappropriate Plaintiff's Trade Secrets and Plaintiff has a right to protect its Trade Secrets.

12. Unless Defendant is immediately restrained, BusPatrol will be irreparably injured, and suffer loss and damage by:

    a)    further loss, use or disclosure of BusPatrol's Trade Secrets and confidential information;

    b)    further loss of goodwill and loss of business reputation;

c) present and future economic loss, which is unascertainable at this time; and,

d) the destruction of relevant documents and information by Defendant.

13. Unless Defendant is immediately enjoined, BusPatrol will have no adequate remedy at law because once its Trade Secrets cease to be protectable they are lost forever. Such harm is imminent because if injunctive relief is not entered immediately, Defendant will in all likelihood continue its tortious conduct to BusPatrol's detriment and such actions will result in further damage to BusPatrol.

14. An *ex parte* order is necessary because notice to Plaintiff would impair or annul this Court's power to grant the requested relief because the property and information at issue could be removed, secreted or destroyed if notice were provided.

IT IS THEREFORE ORDERED that the Clerk of the Court issue a Temporary Restraining Order that Defendant, American Traffic Solutions, Inc., its agents, servants, employees, representatives, independent contractors, attorneys, and all persons, firms, corporations or other entities, acting or purporting to act in active concert or participation with Defendant who receive actual notice of this Order by service or otherwise are ORDERED, ENJOINED AND/OR PREVENTED as follows:

1. <u>Protection of Trade Secrets</u>. Defendant is enjoined from obtaining, using, disclosing, being in possession of or requesting access to (either directly or indirectly) any of BusPatrol's Trade Secrets as such term is defined herein.

2. <u>Return of BusPatrol's Confidential Information and Equipment</u>. Defendant is ordered to return, within five (5) business days of the service of the Temporary Restraining Order upon it, to counsel for BusPatrol, all originals and copies of BusPatrol's documents, products, drawings made from or information related to any attempts to reverse engineer BusPatrol's products in Defendant's possession, custody, or control (constructive or otherwise) regardless of whether such documents are located on any tablets, mobile phones, computer desk tops, laptops, email accounts, or in cloud or other storage devices. Defendant is further precluded from using any information or knowledge derived therefrom.

3. <u>Cannot Destroy Relevant Documents.</u> Defendant is further enjoined from destroying, deleting, secreting, moving to another location, transferring custody or control or otherwise losing custody or control of (or encouraging or directing third parties to do the same) during the pendency of this action any text messages, computer files, faxes or documents, products (including, but not limited to,

photographs, emails, letters, books, files, computer programs, computer software, etc.) that relate to the business of BusPatrol, refer to BusPatrol, communications with the Dallas County School District, communications with any of BusPatrol's suppliers, or any other documents relevant to this lawsuit, but exclusive of documents and materials provided to BusPatrol's counsel in compliance with this Order.

## BOND

IT IS FURTHER ORDERED that the Court Clerk, upon the filing of a bond in the amount of $ 500 (or cash deposit in lieu thereof) and on approving the same according to law, shall issue a temporary restraining order in conformity with the law and the terms of this Order. IT IS FURTHER ORDERED that the Court Clerk, upon the filing of the bond and on approving the same according to law, shall issue a temporary restraining order in conformity with the law and the terms of this Order. Once the Order becomes effective, it shall remain in effect for fourteen (14) days or until further order of this Court.

## NOTICE OF SHOW CAUSE HEARING

IT IS FURTHER ORDERED that a hearing on Plaintiff's request for a temporary injunction is set before the 95th Judicial District Court, Dallas County, Texas on the 26th day of April, 2018, at 11:00 a.m./ p.m. in the 95th District Court's courtroom located at 600 Commerce Street, Dallas, Dallas County, Texas 75202.

Signed this 17th day of April, 2018, at April 2:00 a.m ./p.m.

JUDGE 68th
JUDICIAL DISTRICT COURT SITTING FOR
JUDGE 95th
JUDICIAL DISTRICT COURT OF DALLAS COUNTY T

MA/Hav
JUDGE/PRESIDING ✱
68th District Court

✱ Disclosed prior service (2001-2005) on Dallas County School Board.

6102168v.2