**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| BUSPATROL AMERICA, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 3:18-cv-00991-D |
| v. | ) | |
| | ) | **Jury Trial Demanded** |
| AMERICAN TRAFFIC SOLUTIONS, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISSOLVE**
**STATE COURT *EX PARTE* TEMPORARY RESTRAINING ORDER AND MODIFY**
**STATE COURT *EX PARTE* ORDER GRANTING EXPEDITED DISCOVERY**

Phillip B. Philbin
LEAD ATTORNEY
State Bar No. 15909020
Michael D. Karson
State Bar No. 24090198
**HAYNES AND BOONE, LLP**
2323 Victory Avenue
Suite 700
Dallas, Texas 75219
Tel.: (214) 651-5000
Fax: (214) 651-5940
Email: phillip.philbin@haynesboone.com
       michael.karson@haynesboone.com

Dated: April 19, 2018

*Attorneys for Defendant*
*American Traffic Solutions, Inc.*

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

STATEMENT OF RELIEF REQUESTED..................................................................................3

FACTUAL BACKGROUND....................................................................................................4

LEGAL STANDARD.............................................................................................................7

ARGUMENT .......................................................................................................................9

      I.     This Court Should Dissolve The State Court *Ex Parte* Temporary
Restraining Order Because Plaintiff Has Failed to Demonstrate a
Substantial Likelihood of Success on the Merits.....................................................9

            A.     Plaintiff Has Failed To Demonstrate That It Owns an Enforceable
Trade Secret. ..............................................................................................10

            B.     Plaintiff Has Failed to Demonstrate That ATS Acquired any
Alleged Trade Secret Through "Improper Means."...................................15

            C.     Plaintiff Has Failed to Demonstrate That ATS Disclosed The
Alleged Trade Secret(s). ............................................................................15

      II.    This Court Should Modify the State Court *Ex Parte* Order Granting
Expedited Discovery...............................................................................................16

            A.     The Court Should Require Plaintiff to Identify Each Alleged Trade
Secret with Reasonable Particularity Before any Discovery Takes
Place............................................................................................................17

            B.     The Court Should Limit the Discovery Ordered by the State Court
to that Directed to any Alleged Trade Secret(s) that Plaintiff
Sufficiently Identifies................................................................................19

            C.     The Court Should Not Permit the Overbroad Discovery Sought by
Plaintiff. ....................................................................................................19

            D.     The Discovery Schedule Should Be Lengthened.......................................21

            E.     The Court Should Permit Expedited Discovery of Plaintiff by ATS.........21

CONCLUSION....................................................................................................................21

REQUEST FOR HEARING...................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AlliantGroup, L.P. v. Mols*,
  No. H-16-3114, 2017 WL 432810 (S.D. Tex. Jan. 30, 2017) ............................................... 4, 10

*Applied Materials, Inc. v. Advanced Micro-Fab. Equip. (Shanghai) Co.*,
  No. C 07-5248 JW (PVT), 2008 WL 183520 (N.D. Cal. Jan. 18, 2008) ................................. 7

*Automed Tech., Inc. v. Eller*,
  160 F. Supp. 2d 915 (N.D. Ill. 2001) ................................................................................. 12

*Azzopardi v. Ocean Drilling & Exploration Co.*,
  742 F.2d 890 (5th Cir. 1984) ............................................................................................. 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 11

*Bioquell, Inc. v. Feinstein*,
  No. 10-2205, 2010 WL 4751709 (E.D. Pa. Nov. 23, 2010) ................................................. 11

*Clearline Techs. Ltd. v. Cooper B-Line, Inc.*,
  No. H-11-1420, 2012 WL 43366 (S.D. Tex. Jan. 9, 2012) .............................................. 11, 12

*Clements Wire & Mfg. Co. v. NLRB*,
  589 F.2d 894 (5th Cir. 1979) ............................................................................................. 9

*Deepew v. LNV Corp.*,
  No. 14-cv-284-SDD-RLB, 2014 WL 4660800 (M.D. La. Sept. 17, 2014) .............................. 8

*Demond v. Infiniti HR LLC*,
  No. 3:17-cv-1322-D, 2017 WL 3835951 (N.D. Tex. Aug. 11, 2017) ........................ 4, 9, 10, 16

*DeRubeis v. Witten Tech., Inc.*,
  244 F.R.D. 676 (N.D. Ga. 2007) ................................................................................. 6, 7, 20

*Dura Global Tech., Inc. v. Magna Donnelly Corp.*,
  No. 07-CV-10945, 2007 WL 4303294 (E.D. Mich. Dec. 7, 2007) ........................................ 12

*Educ. Mgmt. Servs., LLC v. Tracey*,
  102 F. Supp. 3d 906 (W.D. Tex. 2015) .......................................................................... 4, 10

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
  762 F.2d 464 (5th Cir. 1985) ............................................................................................. 9

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*,
  415 U.S. 423 (1974) ........................................................................................................ 7, 8

ii

*Janvey v. Alguire*,
    647 F.3d 585 (5th Cir. 2011).................................................................................. 8, 9, 16

*L-3 Commc'ns Corp. v. Reveal Imaging Tech., Inc.*,
    No. 035810BLS, 2004 WL 2915743 (Mass. Sup. Ct. Dec. 2, 2004) ........................................ 7

*Medafor, Inc. v. Starch Med. Inc.*,
    No. 09-CV-0441 PJS/FLN, 2009 WL 2163580 (D. Minn. July 16, 2009) ....................... 11, 12

*Nissho-Iwai Am. Corp. v. Kline*,
    845 F.2d 1300 (5th Cir. 1988)................................................................................... 7, 8

*Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*,
    771 F. Supp. 2d 680 (S.D. Tex. 2011) ................................................................................ 11

*Porus Media Corp. v. Midland Brake, Inc.*,
    187 F.R.D. 598 (D. Minn. 1999)....................................................................................... 13

*Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*,
    No. 3:12CV220 (WWE), 2012 WL 3113162 (D. Conn. July 31, 2012)............................. 6, 20

*Rizvi v. JP Chase Bank, Nat'l Ass'n*,
    No. 3:13-cv-3339-N, 2013 WL 12137167 (N.D. Tex. Dec. 10, 2013) ...................................... 8

*S. Ohio Sand, LLC v. Preferred Proppants, LLC*,
    No. 16-cv-833, 2016 WL 1457773 (N.D. Ohio April 14, 2016) ......................................... 7, 8

*Savell v. S. Ry.*,
    93 F.2d 377 (5th Cir. 1937)................................................................................................ 7

*Stenberg v. Checker Oil Co.*,
    573 F.2d 921 (6th Cir. 1978).............................................................................................. 8

*StoneEagle Servs., Inc. v. Valentine*, No. 3:12-cv-1687-P, 2013 WL 9554563 (N.D. Tex. June 5,
    2013).............................................................................................................................. 12, 17

*Switch Comm. Grp. v. Ballard*,
    No. 2:11-cv-00285-KJD-GWF, 2012 WL 2342929 (D. Nev. June 19, 2012)........................... 6

*United Servs. Auto. Assoc. v. Mitek Sys., Inc.*,
    289 F.R.D. 244 (W.D. Tex. Feb. 15, 2013)....................................................................... 17, 18

## Statutes

28 U.S.C. § 1450.................................................................................................................. 7, 8

Tex. Civ. Prac. & Rem. Code § 134A.001 *et seq.* ..................................................................... 9

Tex. Civ. Prac. & Rem. Code § 134A.002(6)............................................................................ 10

**Rules**

Fed. R. Civ. P. 16(c)(2)(L) ................................................................................................ 18

Fed. R. Civ. P. 45(c)(1) ..................................................................................................... 20

Fed. R. Civ. P. 65 ........................................................................................................... 8, 9

## INTRODUCTION

In a widely reported November 2017 election, the citizens of Dallas County voted overwhelmingly to shut down Dallas County Schools ("DCS") following revelations of mismanagement and financial instability. A company called Force Multiplier Solutions, Inc. ("FMS") and its Chief Executive Officer, Robert Leonard, had partnered with DCS to operate camera systems installed on school buses and stop arms to capture, document, and fine drivers who illegally passed stopped school buses ("Stop Arm Camera Program"). FMS and Mr. Leonard helped facilitate DCS's purchase of the camera systems for the Stop Arm Camera Program through a complicated web of suppliers and financiers. As the school bus camera program proved more expensive and less profitable than expected, DCS needed money to continue the program and satisfy its obligations to FMS and its affiliates, according to available news reports.[1] That need for money led to a failed land deal involving yet more companies with ties to FMS and Mr. Leonard.[2] Ultimately, the voters of Dallas County decided to shutter DCS and a Dissolution Committee[3] was appointed to oversee operations and ultimately carry out the voters' will. Since revelations of the scandal broke:

- the Federal Bureau of Investigation raided FMS's offices in Dallas and Mr. Leonard's home in New Orleans, Louisiana;[4]

- the former superintendent of DCS, Rick Sorrells, pleaded guilty to federal wire fraud charges;[5] and

---

[1] Big Buses, Bigger Problems: Investigating DCS, https://www.nbcdfw.com/investigations/ Dallas-County-Schools-Investigative-Series-401118835.html (last visited April 18, 2018).
[2] *Id.*
[3] The Dissolution Committee for the Former Board of Dallas County School Trustees.
[4] FBI Searches Home, Office of Man Connected to Dallas County Schools' Money Scandal, https://www.nbcdfw.com/investigations/FBI-Searches-Home-Office-of-Man-Connected-to-Dallas-County-Schools-Money-Scandal-453445573.html (last visited April 18, 2018).
[5] Former Dallas County Schools Superintendent Rick Sorrells Pleads Guilty to Federal Wire Fraud Charge, https://www.nbcdfw.com/investigations/Former-Dallas-County-Schools-

1

- an associate of Mr. Leonard, Slater Swartwood Sr., pleaded guilty to federal money laundering conspiracy charges.[6]

This case follows in the wake of the DCS scandal and is the next chapter in the widely reported story of DCS's downfall.  In attempt to mitigate the harm to taxpayers from its Stop Arm Camera Program, DCS contacted Defendant American Traffic Solutions, Inc. ("ATS") as early as December 2016 and offered to sell its program and equipment to ATS.  Through ATS's discussions with DCS, DCS sent hardware and equipment purchased by DCS, to ATS.  DCS and ATS did not finalize any agreement before the taxpayers voted to shut down DCS.  In an effort to minimize the financial impact of DCS's failed deals, the Dissolution Committee solicited proposals for the purchase of assets and contracts formerly held by DCS regarding the Stop Arm Camera Program.  (Ex. H[7].)  ATS submitted a proposal regarding ATS's possible acquisition of some or all of the assets offered for sale.

Plaintiff BusPatrol America, LLC ("BusPatrol") purchased assets "from a group of companies affiliated with Force Multiplier Solutions, Inc." that Plaintiff calls the "BusStop Technology."  (Ex. A at 2; Ex. A at 2 n.2; Ex. C at 4; Ex. C at 4 n.2.)  Upon information and belief, Plaintiff also responded to the Dissolution Committee's bid proposal.  At around the same time, Plaintiff, as a supposed successor to now-defunct FMS, filed a petition in the District Court of Dallas County, Texas ("State Court") against ATS, alleging misappropriation of trade secrets and seeking monetary and injunction relief.  Plaintiff appears to allege that the Dissolution

---

Superintendent-Rick-Sorrells-Pleads-Guilty-to-Federal-Wire-Fraud-Charge-478559943.html (last visited April 18, 2018).
[6] Man Who Pleaded Guilty in Dallas Bus Bribery Investigation Appears in Federal Court, https://www.nbcdfw.com/investigations/Man-Who-Pleaded-Guilty-in-Dallas-Bus-Bribery-Investigation-Appears-in-Federal-Court-473984543.html (last visited April 18, 2018).
[7] All exhibits referenced in this memorandum as "Ex. ___" may be found in the Appendix in Support of ATS's Motion to Dissolve State Court Ex Parte Temporary Restraining Order and Modify State Court Ex Parte Order Granting Expedited Discovery, filed contemporaneously herewith.

Committee lacked authority to communicate with ATS regarding the personal property purchased by DCS and that the Dissolution Committee violated some unidentified duty of confidentiality by sending DCS's personal property to ATS.

In short, after FMS facilitated DCS's purchase of millions of dollars of equipment and technology, FMS's apparent successor—the Plaintiff in this case—proposed to buy back that same equipment for pennies on the dollar while, at the same time, attempting to use the State Court's *ex parte* Temporary Restraining Order to frustrate the Dissolution Committee's ability to work with a new vendor in ATS to protect the taxpayers of Dallas County, Texas.

## STATEMENT OF RELIEF REQUESTED

ATS files this Motion seeking relief from two *ex parte* state court actions.  On Friday, April 13, 2018, Plaintiff sought and obtained a Temporary Restraining Order from the State Court without any notice to ATS.  The State Court's *ex parte* Temporary Restraining Order is attached hereto as Exhibit A.  On Monday, April 16, 2018, Plaintiff obtained an Order Granting Expedited Discovery from the State Court, without hearing from ATS.  The State Court's *ex parte* Order Granting Expedited Discovery is attached hereto as Exhibit B.

ATS respectfully requests that this Court grant the following relief:

(1)     Dissolve the State Court's *ex parte* Temporary Restraining Order for failure to comply with Federal Rule of Civil Procedure 65;

(2)     Require Plaintiff to identify the alleged trade secrets that it contends are the foundation of this case specifically and with reasonable particularity;

(3)     Once the alleged trade secrets have been specifically identified with sufficient particularity, grant ATS limited expedited discovery related to the identified alleged trade secrets; and

(4)     Modify the State Court's *ex parte* Order Granting Expedited Discovery to (i) sequence discovery after Plaintiff's identification of trade secrets, (ii) limit the discovery sought by Plaintiff to that discovery related to the identified alleged trade secrets.

3

## FACTUAL BACKGROUND

The lone cause of action Plaintiff asserts in its State Court petition is alleged misappropriation of trade secrets under the Texas Uniform Trade Secrets Act ("TUTSA").  (*See* Ex. C.)  In its petition, Plaintiff sought monetary and non-monetary relief for the alleged trade secret misappropriation, but Plaintiff has not sufficiently identified a single, specific alleged trade secret in this case with reasonable particularity.   In order to evaluate a claim of misappropriation of trade secrets under TUTSA, the first step is to determine whether a trade secret even exists.  *Demond v. Infiniti HR LLC*, No. 3:17-cv-1322-D, 2017 WL 3835951, at *4 (N.D. Tex. Aug. 11, 2017) (citing *Educ. Mgmt. Servs., LLC v. Tracey*, 102 F. Supp. 3d 906, 914 (W.D. Tex. 2015) and *AlliantGroup, L.P. v. Mols*, No. H-16-3114, 2017 WL 432810, at *10 (S.D. Tex. Jan. 30, 2017)).

In this case, determining the existence of an alleged trade secret is substantially more complicated.  Once the Plaintiff identifies the alleged trade secret(s) with sufficient particularity, this Court must determine whether this Plaintiff has standing to protect the identified alleged trade secret(s), as Plaintiff admits its alleged trade secrets originated with other entities, pleading that Plaintiff purchased assets "from a group of companies affiliated with Force Multiplier Solutions, Inc." that Plaintiff calls the "BusStop Technology."  (Ex. A at 2; *id.* at 2 n.2; Ex. C at 2; Ex. C at 2 n.2.)   And Plaintiff asserts that "[t]he BusStop Technology forms, in part, BusPatrol's Trade Secrets."  (*Id.* at 2.)  Because the alleged intellectual property at issue in this case did not originate with Plaintiff, this case raises issues of ownership, proof of ownership, and standing not present in most trade secret cases.

It is axiomatic that a trade secret must be secret.  Tex. Civ. Prac. & Rem. Code § 134A.002(6).  After Plaintiff identifies the alleged trade secret(s) at issue in this case with sufficient particularity, and assuming this Court is satisfied that Plaintiff in fact owns the

4

identified alleged trade secret(s), Plaintiff must demonstrate that all of the myriad of people and entities involved in the ownership chain of the identified alleged trade secret(s) took reasonable steps to keep the information secret.  Plaintiff must also demonstrate that anyone with lawful access to the identified alleged trade secret(s) (e.g., vendors, licensees, and sub-licensees) had a corresponding obligation to maintain confidentiality and in fact complied with such obligations.

Plaintiff's State Court petition fails to plead and prove that Plaintiff is entitled to a temporary restraining order under Federal Rule of Civil Procedure 65.  Plaintiff's State Court petition does not sufficiently identify the alleged trade secret(s) at issue in this case with reasonable particularity, let alone demonstrate that Plaintiff has standing to protect them or that the alleged trade secret(s) are, in fact, secret.  Accordingly, this Court should dissolve the State Court *ex parte* Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65(b)(4).

Moreover, the State Court *ex parte* Order Granting Expedited Discovery is overbroad and should be modified.  For example, the State Court ordered ATS to deliver to Plaintiff "***[a]ll BusPatrol products, including FMS [Force Multiplier Solutions, Inc.] products***, in Defendant's possession, custody or control."  (Ex. B at 4 (emphasis added).)  But Plaintiff has not demonstrated—or even alleged—that it is the rightful owner of all Force Multiplier Solutions, Inc. products in ATS's possession, custody, or control because Plaintiff only claims to have purchased "***certain*** confidential and proprietary technology from a group of companies ***affiliated with*** Force Multiplier Solutions, Inc."  (Ex. C at 4 (emphases added).)  And even assuming Plaintiff purchased some assets from FMS, Plaintiff ignores the reality that DCS ***also purchased equipment from, through, or with the assistance of FMS***.  Although Plaintiff demands that ATS deliver property to Plaintiff, it cites no authority to support its request that

5

ATS be ordered to turn over property to which Plaintiff may have no rightful claim.[8]  This Court should modify the State Court *ex parte* Order Granting Expedited Discovery and limit it to any alleged trade secret(s) that Plaintiff identifies with reasonable particularity and demonstrates that it owns.

The State Court *ex parte* Order Granting Expedited Discovery is also premature and should be modified.  Although Plaintiff has yet to identify any alleged trade secrets at issue in this case with reasonable particularity, the State Court ordered ATS to deliver to Plaintiff "[a] copy of Defendant's bus stop arm system."  (Ex. B at 4.)  By putting the cart before the horse and requiring production of ATS's proprietary systems before Plaintiff identifies its alleged trade secrets with reasonable particularity, the State Court *ex parte* Order Granting Expedited Discovery improperly authorizes Plaintiff to mold its misappropriation allegations to comport with whatever Plaintiff may find in ATS's products.  *See Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 3:12CV220 (WWE), 2012 WL 3113162, at *2 (D. Conn. July 31, 2012) ("early identification of trade secrets . . . prevents frivolous lawsuits" by preventing the plaintiff from tailoring its trade secret claims to the defendant's discovery); *DeRubeis v. Witten Tech., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007) (same).  Unless the Plaintiff identifies its alleged trade secrets, the Court and the parties lack sufficient information to set an appropriate scope of discovery and to determine whether particular discovery disputes fall within that scope.  *See Switch Comm. Grp. v. Ballard*, No. 2:11-cv-00285-KJD-GWF, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012); *Applied Materials, Inc. v. Advanced Micro-Fab. Equip. (Shanghai) Co.*,

---

[8] DCS provided its equipment to ATS in connection with DCS's offer to sell its Stop Arm Camera Program and equipment to ATS.  DCS has represented to ATS and others that DCS is the rightful owner of the equipment, not Plaintiff.  (*E.g.*, Ex. D ("Recently, during the inventory process, we [the Dissolution Committee] learned that BusPatrol America, LLC has been given **unauthorized access** to **our camera kits** . . . ." (emphases added)).)

No. C 07-5248 JW (PVT), 2008 WL 183520, at *1 (N.D. Cal. Jan. 18, 2008); *DeRubeis*, 244 F.R.D. at 680–81; *L-3 Commc'ns Corp. v. Reveal Imaging Tech., Inc.*, No. 035810BLS, 2004 WL 2915743, at *13 (Mass. Sup. Ct. Dec. 2, 2004).  Moreover, as Plaintiff alleged and the State Court found, ATS is Plaintiff's "main" and "major" competitor.  (Ex. A at 2; Ex. C at 1, 5.) The parties' competitive relationship further informs the impropriety of Plaintiff's request to the State Court to require ATS to turn over ATS's product to Plaintiff.

Finally, the State Court *ex parte* Order Granting Expedited Discovery is unilateral in favor of Plaintiff and should be modified.  Although ATS disputes the breadth of the discovery permitted by the State Court *ex parte* Order Granting Expedited Discovery, ATS does not dispute that Plaintiff may be entitled to some discovery *if* it identifies its alleged trade secret(s) with reasonable particularity, but ATS requires some discovery as well in order to prepare for the preliminary injunction hearing.  Accordingly, ATS respectfully requests that the Court permit ATS to also conduct reciprocal and proportional discovery on an expedited basis.

## LEGAL STANDARD

Injunctions, including temporary restraining orders, issued by the state court "prior to . . . removal . . . remain in full force and effect until dissolved or modified by the district court."  28 U.S.C. § 1450; *S. Ohio Sand, LLC v. Preferred Proppants, LLC*, No. 16-cv-833, 2016 WL 1457773, at *2 (N.D. Ohio April 14, 2016).  But once an action is removed to federal court, "federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal."  *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 437 (1974).  Thus, this Court "accepts the case in its current posture 'as though everything done in state court had in fact been done in the federal court.'"  *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1303 (5th Cir. 1988) (quoting *Savell v. S. Ry.*, 93 F.2d 377, 379 (5th Cir. 1937)).

7

"[I]t is well established that the state court order becomes federalized insofar as federal, rather than state, procedure governs the manner of its enforcement as well as supplies whatever policy justification that might support its continuance." *Id.* (citing *Granny Goose Foods*, 415 U.S. at 438–41 and *Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890, 895 (5th Cir. 1984)). Thus, this Court has the authority to dissolve the State Court *ex parte* Temporary Restraining Order and applies federal law when reviewing the State Court *ex parte* Temporary Restraining Order. *See Deepew v. LNV Corp.*, No. 14-cv-284-SDD-RLB, 2014 WL 4660800, at *5 (M.D. La. Sept. 17, 2014); *see also* 28 U.S.C. § 1450. Plaintiff has the burden to show a right to continue relief in order to maintain the State Court *ex parte* Temporary Restraining Order. *S. Ohio Sand*, 2016 WL 1457773, at *2 (citing *Stenberg v. Checker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)).

Under Rule 65(b) of the Federal Rules of Civil Procedure, a temporary restraining order without notice to the adverse party may only issue if:

(A)    specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B)    the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)–(B). Moreover, to maintain its temporary restraining order, Plaintiff must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Rizvi v. JP Chase Bank, Nat'l Ass'n*, No. 3:13-cv-3339-N, 2013 WL 12137167, at *1 (N.D. Tex. Dec. 10, 2013). If the party seeking injunctive relief "does not succeed in carrying its

burden on any one of the four prerequisites, a preliminary injunction may not issue and, if issued, will be vacated on appeal." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (citing *Clements Wire & Mfg. Co. v. NLRB*, 589 F.2d 894, 897 (5th Cir. 1979)).

## ARGUMENT

### I.    THIS COURT SHOULD DISSOLVE THE STATE COURT *EX PARTE* TEMPORARY RESTRAINING ORDER BECAUSE PLAINTIFF HAS FAILED TO DEMONSTRATE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

Pursuant to Federal Rule of Civil Procedure 65(b)(4), this Court should dissolve the State Court *ex parte* Temporary Restraining Order because Plaintiff has not demonstrated that it is entitled to relief under Federal Rule of Civil Procedure 65(b)(1).  Specifically, Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of its trade secret misappropriation claim.

In its petition, Plaintiff failed to demonstrate a substantial likelihood of success on the merits of its trade secret misappropriation claim and this Court should therefore dissolve the State Court *ex parte* Temporary Restraining Order.  Plaintiff "must present a prima facie case" of trade secret misappropriation in order to establish a substantial likelihood of success on the merits of its claim entitling it to obtain or maintain a temporary restraining order.  *Demond*, 2017 WL 3835951, at *4 (quoting *Janvey*, 647 F.3d at 596).  The substantive law underlying Plaintiff's trade secret misappropriation claim provides the framework to assess whether Plaintiff has made a prima facie showing.  *Id.* (quoting *Janvey*, 647 F.3d at 596).  Here, Plaintiff relies on the TUTSA.  (Ex. C at 7 (citing Tex. Civ. Prac. & Rem. Code § 134A.001 *et seq.*).)

A cause of action for trade secret misappropriation under Texas law requires Plaintiff to prove that:

9

(1)     a trade secret existed;

(2)     the defendant acquired the trade secret through "improper means";[9] and

(3)     the defendant disclosed the trade secret without the plaintiff's consent.

*Demond*, 2017 WL 3835951, at *4 (citing *Tracey*, 102 F. Supp. 3d at 914 and *AlliantGroup*, 2017 WL 432810, at *10).  Here, Plaintiff has failed to demonstrate any of these elements.

> **A.     Plaintiff Has Failed To Demonstrate That It Owns an Enforceable Trade Secret.**

Under the TUTSA, a trade secret means:

> all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled,     or     memorialized     physically,     electronically,     graphically, photographically, or in writing if:
>
> (A)     the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
>
> (B)     the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code § 134A.002(6)(A)–(B).

In its Petition, Plaintiff asserts in conclusory fashion that its alleged trade secrets comprise "proprietary information, state-of-the-art technology, and other information," (Ex. C at 1), "confidential and proprietary information," (*id.* at 3), and "certain confidential and proprietary technology from a group of companies affiliated with Force Multiplier Solutions, Inc." that Plaintiff refers to as "BusStop Technology," (*id.* at 4 n.2).  Plaintiff further asserts in conclusory fashion that its:

---

[9] Plaintiff's petition repeatedly references "improper means."  (Ex. C at 1, 8.)

> confidential information and trade secrets include proprietary equipment and software that makes up the Busguard System and the ONGO transit system, designs, engineering plans, software structure and architecture, software code, engineering plans, know-how, technical knowledge of what processes work and what does not, lists of components needed to make the system work, processes, maintenance data, procedures, processes and instructions, operating systems, technical or engineering information, designs, plans, compilations, program devices, programs, methods, techniques, processes, and supplier information . . . .

(Ex. A at 1; Ex. C at 3.)  Other than these vague and conclusory allegations, however, Plaintiff does not identify its alleged trade secrets with any particularity.

Plaintiff's vague and conclusory recitation of generic categories of information is insufficient to satisfy Rule 8's pleading standard, let alone the requirements of Rule 65 to obtain a temporary restraining order.  For example, in *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680 (S.D. Tex. 2011), plaintiff alleged general categories of trade secret information, including "competitive knowledge of insurance regulations and processing," and the like.  *Id.* at 690.  The Southern District of Texas granted defendant's motion to dismiss due to plaintiff's failure to "identif[y] the specific trade secret they claim to have been stolen."  *Id.* at 701; *see also Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, No. H-11-1420, 2012 WL 43366, at *11 (S.D. Tex. Jan. 9, 2012) (dismissing misappropriation of trade secrets claim because plaintiff "failed to identify the specific trade secret information it claims has been misappropriated") (citing *Pension Advisory Grp.*, 771 F. Supp. 2d at 701); *Bioquell, Inc. v. Feinstein*, No. 10-2205, 2010 WL 4751709, at *6 (E.D. Pa. Nov. 23, 2010) (dismissing misappropriation of trade secrets claim on grounds that the complaint failed to "identify the[] trade secrets" and was, instead, "merely a string of conclusory statements devoid of any factual basis") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Medafor, Inc. v. Starch Med. Inc.*, No. 09-CV-0441 PJS/FLN, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009) (dismissing misappropriation of trade secrets claim because plaintiff's "descriptions of its trade

secrets and 'Confidential Information' are insufficient to inform [defendant] of the basic fact of what exactly it is supposed to have stolen or unlawfully obtained").   If such vague and conclusory allegations are insufficient to maintain an action in federal court, surely they must fail to sustain the extraordinary relief of a temporary restraining order.

In *StoneEagle Servs., Inc. v. Valentine*, this Court addressed a motion for a more definite statement of trade secrets under Rule 16.   No. 3:12–cv–1687–P, 2013 WL 9554563, at *4 (N.D. Tex. June 5, 2013).   The *StoneEagle* court described the types of trade secret allegations that fail to satisfy the "reasonable particularity" standard, including:

(1)     laundry list of general categories,

(2)     lengthy, descriptive, but non-specific paragraphs,

(3)     generally listing software, algorithms, and processes that a plaintiff developed,

(4)     disclosures that only reveal the end results of, or functions performed by, the claimed trade secrets, and

(5)     concepts, elements, or components that make up designs.

*Id.*; *see also Clearline*, 2012 WL 43366, at *11 (finding that plaintiff's use of the phrase "technical and financial information" failed to identify trade secrets with sufficient particularity); *Medafor*, 2009 WL 2163580, at *1 (finding that plaintiff's use of the phrases "methodologies, formulas, devices, and compilations of information" failed to identify trade secrets with sufficient particularity); *Dura Global Tech., Inc. v. Magna Donnelly Corp.*, No. 07-CV-10945, 2007 WL 4303294, at *4 (E.D. Mich. Dec. 7, 2007) (finding that plaintiff's "list of general categories" of information failed to identify trade secrets with particularity); *Automed Tech., Inc. v. Eller*, 160 F. Supp. 2d 915, 925–26 (N.D. Ill. 2001) (finding that plaintiff's list of generalities such as "software, designs, and research" and high-level references to the names of three research projects failed to identify trade secrets with sufficient particularity); *Porus Media*

*Corp. v. Midland Brake, Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) (finding that plaintiff's use of phrases such as "manufacturing process information" and "detailed drawings" failed to identify trade secrets with sufficient particularity).   Plaintiff's rote recitation of types of information or superficial references to end products or services that only reveal end results are insufficient to identify its alleged trade secrets.  Having failed to identify its alleged trade secrets, Plaintiff cannot maintain the temporary restraining order.

Nor does Plaintiff point to any document, evidence, or other proof to demonstrate the existence of trade secrets or that Plaintiff owns them.  Plaintiff merely asserts that it is the owner of unidentified trade secrets and, on that basis alone, requested the temporary restraining order.  But Plaintiff's ownership of any alleged trade secret involving the Dissolution Committee's cameras is—at best—questionable.  For example, the Dissolution Committee has communicated with other school districts that were previously part of DCS's Stop Arm Camera Program.  (*See, e.g.*, Ex. D (Dissolution Committee correspondence).)   In that correspondence, the Dissolution Committee asserted its ownership over the cameras and noted that Plaintiff was given "unauthorized access" to the camera kits.

> As part of the process, we have started a physical inventory of all assets, which include the camera kits located within your district.  Recently, during the inventory process, we learned that ***BusPatrol America, LLC has been given <u>unauthorized access</u> to our camera kits*** and in some cases removed them from your school buses.  This company does not have a contract with the Committee or DCS and should not be granted access to ***equipment owned by the Committee***.  In some cases, these cameras serve as collateral for debt that has not yet been paid, which magnifies the issues surrounding unauthorized access to this equipment.

(*Id.* (emphases added).)

Furthermore, DCS entered into a Technology License Agreement with FMS under which DCS enjoyed a broad technology license ***with no confidentiality obligations***.  (Ex. E.)  Under the Technology License Agreement, DCS enjoyed "a fully paid up, perpetual, exclusive (in the

Territory) right and license, including the right and license to sublicense, to use their Technology in order to conduct the Business in the Territory, including the right to process, prepare, sell and maintain the Licensed Products and services associated therewith using said Technology in the Territory." (*Id.* at 1.)  The license specifically included "the right to use any and all Intellectual Property (as defined in the Asset Purchase Agreement) necessary to conduct the Business in the Territory."   (*Id.* at 1–2.)   Although the Technology License Agreement includes a title referencing "confidentiality," it does not impose ***any*** duties of confidentiality on DCS.  While Plaintiff asserts that school district that used stop arm cameras "were required to sign agreements that contained non-disclosure provisions, and provided for the use of such technology only for a very limited use and purpose," (Ex. C at 4), Plaintiff neglected to include any such agreements with its petition.  Attached hereto as Exhibit F is an exemplar Interlocal Agreement to Leave Equipment between Texserve[10] and a District.  (Ex. F.)  Pursuant to that agreement, the District was required to keep confidential anything it learned from DCS, but the agreement did not bind DCS  to  keep  its  own  information  confidential.   (*Id.*  at 13–14  ("[D]uring  the  term  of  this Agreement and for an indefinite period thereafter, neither party shall disclose to any third person, or use for itself in any way for pecuniary gain, any Confidential Information learned from the other party during the course of negotiations for this Agreement or during the Term of this Agreement, including the terms of this Agreement.").)

Notably, in addition to DCS and FMS, other parties to the agreement included BusGuard, LLC and ONGO Live, Inc. (*id.* at 1), and the "Licensed Products," which are described in Schedule A of the agreement, include the "Busguard® System" and the "ONGO Live Transit Management System." (*Id.* at 1, 8–9.)  But Plaintiff asserts that its alleged trade secrets in this

---

[10] DCS did business as Texserve.  (Ex. G.)  Texserve was DCS only, not Plaintiff, FMS, or any affiliate of FMS.

case include "confidential information and trade secrets include proprietary equipment and software that makes up the ***Busguard System*** and the ***ONGO transit system***."  (Ex. A at 1; Ex. C at 3.)  If those products do, in fact, comprise Plaintiff's alleged trade secrets in this case and Plaintiff does, in fact, own them, DCS already had access to those products and was under no obligation to maintain the technology in confidence.  Thus, they cannot constitute "trade secrets" under TUTSA because they simply are not secret.

### B.    Plaintiff Has Failed to Demonstrate That ATS Acquired any Alleged Trade Secret Through "Improper Means."

As described above, DCS has asserted ownership of the Stop Arm Camera Program property.  (Ex. D (Dissolution Committee correspondence).)  And DCS enjoyed a broad license to the BusGuard and ONGO Live Transit Management Systems technology operative in that property without any duty or obligation of confidentiality.  (Ex. E.)  Thus, when the Committee overseeing DCS's shutdown provided property and information to ATS, ATS acquired it lawfully and without any "improper means."  In light of the evidence included in the exhibits attached hereto, Plaintiff's conclusory and unsupported allegations that ATS somehow acquired information or property through "improper means" (Ex. C at 1, 8) are insufficient to set forth a prima facie case of trade secret misappropriation.  Accordingly, this Court should dissolve the State Court *ex parte* temporary restraining order.

### C.    Plaintiff Has Failed to Demonstrate That ATS Disclosed The Alleged Trade Secret(s).

Plaintiff's State Court petition asserts without support that ATS acquired information or alleged trade secrets "for purposes of duplicating and replicating BusPatrol's superior product," (Ex. C at 1), that ATS "disclosed BusPatrol's Trade Secrets," (*id.* at 8), and that ATS "continues to use and/or disclose BusPatrol's Trade Secrets," (*id.*).  Plaintiff does not identify any document, record, evidence, or other proof in support of these allegations.  Plaintiff bears the

burden of demonstrating a prima facie case of its claims.  *Demond*, 2017 WL 3835951, at *4 (quoting *Janvey*, 647 F.3d at 596).  Conclusory, unsupported, and formulaic allegations are insufficient to meet that burden and, for that additional reason, this Court should dissolve the State Court *ex parte* Temporary Restraining Order.

In any event, ATS has already taken steps to preserve the status quo and mitigate any potential of the conclusory risks that Plaintiff listed in its State Court petition.  ATS has delivered the DCS camera systems to its undersigned outside counsel who will retain possession of them as an officer of this Court until such possession is no longer necessary or required. Access to the DCS camera systems will be limited to outside counsel of record in this case unless and until restrictive access is no longer necessary under this Court's Orders.

## II.     THIS COURT SHOULD MODIFY THE STATE COURT *EX PARTE* ORDER GRANTING EXPEDITED DISCOVERY.

This Court has broad authority under the Federal Rules of Civil Procedure and its inherent authority to manage its docket and supervise discovery.  Here, the State Court's *ex parte* Order Granting Expedited Discovery should be modified in a number of ways.  *First*, Plaintiff should be required to identify its alleged trade secrets with reasonable particularity **before** Plaintiff obtains any discovery of a technical nature from ATS.  *Second*, the discovery that the State Court ordered should be curtailed and directed only at any alleged trade secret(s) that the Plaintiff identifies with sufficient particularity and be proportional to the needs of the case. *Third*, the current discovery schedule is unduly short and places an undue burden on the parties. *Finally*, the Court should authorize ATS to also take expedited discovery that is proportional to the needs of the case so that expedited discovery is not unilateral in favor of Plaintiff.

A.   **The Court Should Require Plaintiff to Identify Each Alleged Trade Secret with Reasonable Particularity Before any Discovery Takes Place.**

As described above in Section I.A, Plaintiff has failed to identify any alleged trade secret(s) with sufficient particularity.  This Court should require a sufficient identification of alleged trade secret(s) before any discovery occurs in order to allow the parties to properly prepare their cases and prevent disputes about the scope of discovery.

This Court's ruling in *StoneEagle* supports requiring such a disclosure.  *See StoneEagle*, 2013 WL 9554563.  There, the plaintiffs alleged that defendants utilized plaintiffs' trade secrets to create a medical payment system similar to the system created by plaintiffs.  *Id.* at *1.  The defendants asserted they could not properly prepare their case or engage in discovery without a more defined list of allegedly misappropriated trade secrets.   Noting that "[t]he growing consensus seems to be in favor of requiring those plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue," the court granted defendants' motion.  *Id.* at *2 (citing *United Servs. Auto. Assoc. v. Mitek Sys., Inc.*, 289 F.R.D. 244 (W.D. Tex. Feb. 15, 2013)).  In doing so, the court rejected plaintiffs' argument that the procedure would cause delay:

> By requiring Plaintiffs to provide a list of trade secrets, the Court and Defendants will be able to more accurately determine relevant responses and appropriate objections.  Plaintiffs will not be required to sift through mounds of irrelevant information produced by Defendants because they were uncertain as to what information was relevant. And Defendants will not be required to waste time guessing at the basis of Plaintiffs' claims.

*Id.* at *3.

The Western District of Texas' decision granting a similar motion in *Mitek* further supports requiring a more detailed identification of trade secrets here.  In *Mitek*, the plaintiff asserted patent infringement and misappropriation of trade secret claims.  In considering the defendant's motion for identification of trade secrets, the court noted that Rule 16(c)(2)(L)

17

"provides the district court with ***broad discretion*** to 'adopt special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems.'"   *Mitek*, 289 F.R.D. at 248 (emphasis in original).   The *Mitek* court held that, pursuant to Rule 16, the court can require pre-discovery trade secret identification to assist a court in managing cases that may involve complex issues or unusual proof problems: "The purpose for this procedural rule is to prevent trade secret related discovery from beginning before a particular trade secret has been identified."   *Id.* at 248–49 (internal quotation marks omitted).

As noted by the *Mitek* court, this procedure has many advantages.   Pre-discovery identification of trade secrets (1) allows "well-investigated claims to proceed while discouraging meritless trade secret claims . . .;" (2) "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope;" (3) "provides defendants with an equal playing field, allowing them ample time and opportunity to develop their defense;" and (4) "allows the [c]ourt to utilize its resources more effectively by exposing the viable claims, permitting early dismissal of the nonviable claims, and allowing the case to proceed unfettered by needless discovery disputes pertaining to unquestionably relevant information central to the parties' claims and/or defenses."   *Id.*   Each of these justifications for pre-discovery identification of trade secrets described in *Mitek* applies here.   Pursuant to at least Rule 16(c)(2)(L) of the Federal Rules of Civil Procedure, this Court should order that, before any discovery takes place, Plaintiff must identify its alleged trade secrets with reasonable particularity by providing a list that (1) separately breaks out each of the individual alleged trade secrets that Plaintiff claims ATS has misappropriated; and (2) identifies all such claims with

sufficient particularity so that the reader understands how each claim differs from public domain information.

**B.      The Court Should Limit the Discovery Ordered by the State Court to that Directed to any Alleged Trade Secret(s) that Plaintiff Sufficiently Identifies.**

_After_ Plaintiff identifies its alleged trade secrets with sufficient particularity—if it can— this Court should limit the discovery that Plaintiff may take to be directed at its identified alleged trade secrets.  Currently, the State Court _ex parte_ Order Granting Expedited Discovery requires ATS to produce "[a]ny documents indicating receipt or the send of BusPatrol _or FMS_ products to ATS," "[a] copy of Defendant's bus stop arm system," and "[a]ll BusPatrol products, _including FMS products_, in Defendant's possession, custody or control."  (Ex. B at 4 (emphases added).)   These requests include property to which Plaintiff may have no legal claim of ownership.   Indeed, the Dissolution Committee has asserted that Plaintiff "has been given unauthorized access to [the Dissolution Committee's] camera kits" and that Plaintiff "does not have a contract with the Committee or DCS and should not be granted access to equipment owned by the Committee."  (Ex. D.)

**C.      The Court Should Not Permit the Overbroad Discovery Sought by Plaintiff.**

Not only should Plaintiff be required to identify its alleged trade secret(s) with reasonable particularity _before_ any discovery takes place, but Plaintiff should not be permitted the overbroad discovery currently authorized by the State Court _ex parte_ Order Granting Expedited Discovery.  For example, the State Court _ex parte_ Order Granting Expedited Discovery requires Bruce Van Etten, one of ATS's employees, to appear for a deposition in Dallas, Texas on Monday, April 23, 2018 at 4:00 p.m.  (Ex. B at 1; _id._ at 5–6.)  But Mr. Van Etten lives and works in Arizona, which is more than 100 miles from where the deposition has been ordered.   If Plaintiff had noticed Mr. Van Etten's deposition in Dallas, Texas, that notice would fail under

Rule 45(c)(1) of the Federal Rules of Civil Procedure.  There is no record that Plaintiff disclosed

Mr. Van Etten's state of residence to the State Court and no reason—certainly none present in

Plaintiff's State Court filings—justifies requiring his attendance at a deposition in Dallas, Texas

when he lives and works in the State of Arizona.

Further, the State Court *ex parte* Order Granting Expedited Discovery unjustifiably

requires ATS to produce its confidential and proprietary information to Plaintiff, its "main" and

"major" competitor.  (Ex. C at 1, 5.)  For example, the Order requires ATS to provide corporate

deposition testimony regarding, *inter alia*:

> 9.      Technical aspects of Defendant's bus stop arm system.
> . . . .
> 13.     ATS's future marketing plans and bids it has made in the last six (6) months;
> . . . .
> 15.     ATS' s information relating to their own bus stop safety system;
> 16.     ATS' s confidential information relating to its bus stop safety system;

(Ex. B at 10.)  It also requires ATS to produce to Plaintiff "[a] copy of Defendant's bus stop arm

system."   (*Id.* at 4.)   In short, Plaintiff is seeking its "main" and "major" competitor's

confidential information related to ATS's products, how ATS plans to market its products and

bid on future projects, and detailed technical aspects of ATS's products, all without ever

identifying its alleged trade secret(s) with any particularity.  Until Plaintiff identifies its alleged

trade secret(s) with sufficient particularity, requiring ATS to produce a copy of its bus stop arm

system and detailed marketing and technical information to ATS's "main" and "major"

competitor would only invite legal and business mischief.  *See Powerweb*, 2012 WL 3113162,

at *2 ("early identification of trade secrets . . . prevents frivolous lawsuits" by preventing the

plaintiff from tailoring its trade secret claims to the defendant's discovery); *DeRubeis*, 244

F.R.D. at 681 (same).

**D.     The Discovery Schedule Should Be Lengthened.**

Because it will presumably take Plaintiff some time to prepare an appropriate identification of its alleged trade secret(s) that describes the alleged trade secret(s) with sufficient particularity, there is no need for the current discovery schedule to remain in place.  *First*, *all discovery* by Plaintiff of ATS should be contingent on Plaintiff's identification of alleged trade secret(s) with sufficient particularity.  *Second*, when discovery commences, it need not move at the rapid pace contemplated in the State Court's *ex parte* Order Granting Expedited Discovery. Once the Court sets a date for a preliminary injunction hearing, the parties can work backward to propose an orderly discovery schedule or, if they are unable to agree, they can submit competing proposals for the Court.

**E.     The Court Should Permit Expedited Discovery of Plaintiff by ATS.**

ATS will need discovery to prepare for the preliminary injunction hearing once one is scheduled.  But, because ATS has not even responded to Plaintiff's petition, discovery is premature at this point.  To the extent the Court permits pre-answer discovery at all, it should permit ATS to propound discovery requests on Plaintiff in preparation of the anticipated preliminary injunction hearing.

**CONCLUSION**

For the foregoing reasons, Defendant American Traffic Solutions, Inc. respectfully requests that this Court grant the instant motion and all relief to which American Traffic Solutions, Inc. is justly entitled.

**REQUEST FOR HEARING**

Pursuant to Rule 65(b)(4) of the Federal Rules of Civil Procedure, Defendant American Traffic Solutions, Inc. is entitled to appear and move to dissolve or modify the State Court *ex parte* Temporary Restraining Order on 2 days' notice to Plaintiff BusPatrol America, LLC.

Defendant American Traffic Solutions, Inc. respectfully requests that this Court set a hearing on this Motion on Monday, April 23, 2018 at the Court's convenience.  The parties agreed that ATS does not have to produce any documents until Monday, April 23, 2018 at 4:00 p.m. and further agreed not to set a hearing on this Motion before Monday, April 23, 2018.

Dated: April 19, 2018

Respectfully submitted,

*/s/ Phillip B. Philbin*
Phillip B. Philbin
LEAD ATTORNEY
State Bar No. 15909020
Michael D. Karson
State Bar No. 24090198
**HAYNES AND BOONE, LLP**
2323 Victory Avenue
Suite 700
Dallas, Texas 75219
Tel.: (214) 651-5000
Fax: (214) 651-5940
Email: phillip.philbin@haynesboone.com
         michael.karson@haynesboone.com

*Attorneys for Defendant*
*American Traffic Solutions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2018, I electronically submitted the foregoing document with the clerk of court for the United States District Court for the Northern District of Texas, using the electronic case files system of the Court.  I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Phillip B. Philbin*
Phillip B. Philbin