# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| BUSPATROL AMERICA, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:18-cv-00991-D |
| | ) | |
| AMERICAN TRAFFIC SOLUTIONS, INC. | ) | **Jury Trial Demanded** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS BUSPATROL'S ORIGINAL VERIFIED PETITION AND, IN THE ALTERNATIVE, <u>MOTION FOR A MORE DEFINITE STATEMENT</u>

Phillip B. Philbin
LEAD ATTORNEY
State Bar No. 15909020
Michael D. Karson
State Bar No. 24090198
**HAYNES AND BOONE, LLP**
2323 Victory Avenue
Suite 700
Dallas, Texas 75219
Tel.: (214) 651-5000
Fax: (214) 651-5940
Email: phillip.philbin@haynesboone.com
         michael.karson@haynesboone.com

*Attorneys for Defendant*
*American Traffic Solutions, Inc.*

Dated: May 7, 2018

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................................1

LEGAL STANDARD.............................................................................................................4

ARGUMENT........................................................................................................................5

      I.      Plaintiff Must Identify its Alleged Trade Secret(s) With Sufficient
              Particularity to Give ATS Notice of the Claim.......................................................5

      II.     Alternatively, the Court Should Order Plaintiff to Provide a More Definite
              Statement and/or Identify its Alleged Trade Secrets with Reasonable
              Particularity.........................................................................................................9

CONCLUSION....................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abrams Shell v. Shell Oil Co.*,
   343 F.3d 482 (5th Cir. 2003)...........................................................................................4

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*,
   No. C 07-5248 JW (PVT), 2008 WL 183520 (N.D. Cal. Jan. 18, 2008)...................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................4, 5

*AutoMed Tech., Inc. v. Eller*,
   160 F. Supp. 2d 915 (N.D. Ill. 2001) ..........................................................................7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................................4, 5, 7

*Bioquell, Inc. v. Feinstein*,
   No. 10-2205, 2010 WL 4751709 (E.D. Pa. Nov. 23, 2010).......................................................7

*Clearline Techs. Ltd. v. Cooper B-Line, Inc.*,
   No. H-11-1420, 2012 WL 43366 (S.D. Tex. Jan. 9, 2012).......................................................6

*DeRubeis v. Witten Tech., Inc.*,
   244 F.R.D. 676 (N.D. Ga. 2007).................................................................................8

*Dura Global Tech., Inc. v. Magna Donnelly Corp.*,
   No. 07-CV-10945, 2007 WL 4303294 (E.D. Mich. Dec. 7, 2007)...........................................5

*Fernandez-Montes v. Allied Pilots Ass'n*,
   987 F.2d 278 (5th Cir. 1993).....................................................................................4

*Medafor, Inc. v. Starch Medical, Inc.*,
   No. 09-CV-0441 PJS/FLN, 2009 WL 2163580 (D. Minn. July 16, 2009) ..............................7

*Metis Int'l, L.L.C. v. Ace INA Holdings, Inc.*,
   No. SA04CA-1033-XR, 2005 WL 1072587 (W.D. Tex. May 6, 2005) ...................................9

*Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*,
   771 F. Supp. 2d 680 (S.D. Tex. 2011) ......................................................................6

*Porous Media Corp. v. Midland Brake Inc.*,
   187 F.R.D. 598 (D. Minn. 1999)................................................................................7

*Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*,
   No. 3:12CV220 (WWE), 2012 WL 3113162 (D. Conn. July 31, 2012)...................................8

*StoneEagle Servs., Inc. v. Valentine*,
  No. 3:12-cv-1687-P, 2013 WL 9554563 (N.D. Tex. June 5, 2013)........................................ 5, 9

*Switch Comm. Grp. v. Ballard*,
  No. 2:11-cv-00285-KJD-GWF, 2012 WL 2342929 (D. Nev. June 19, 2012)............................ 8

*United Servs. Auto. Assoc. v. Mitek Sys., Inc.*,
  289 F.R.D. 244 (W.D. Tex. Feb. 15, 2013)........................................................................ 9, 10

**Statutes**

Civ. Prac. & Rem. § 134A.002(6) .......................................................................................... 5

Civ. Prac. & Rem. § 134A.007(a).......................................................................................... 6

**Rules**

Fed. R. Civ. P. 12(a)(4)(A) ................................................................................................... 1

Fed. R. Civ. P. 12(b)(6)......................................................................................................... 1

Fed. R. Civ. P. 12(e) ......................................................................................................... 1, 9

Fed. R. Civ. P. 16(c)(2)(L)................................................................................................ 1, 9

Fed. R. Civ. P. 8(a)(2).......................................................................................................... 4

## INTRODUCTION

While Plaintiff BusPatrol America, LLC ("BusPatrol") asserts that this is a trade secrets case,[1] it has yet to adequately identify any alleged trade secret(s) at issue.  Instead, BusPatrol merely lists general categories of information within a broad technology area within which it contends its alleged trade secrets might be found.  Plaintiff's laundry list of general categories typifies the kind of disclosures that do not satisfy the reasonable particularity standard required to state a claim for alleged trade secret misappropriation.  Defendant American Traffic Solutions, Inc. ("ATS") respectfully requests that the Court dismiss BusPatrol's claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Alternatively, and pursuant to Rule 12(e), Rule 16(c)(2)(L), or both, ATS moves the Court to order Plaintiff to provide a more definite statement and identify its alleged trade secret(s) with particularity.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2014, Force Multiplier Solutions, Inc. ("FMS") partnered with County School Trustees of Dallas County, State of Texas d/b/a Dallas County Schools ("DCS") to operate camera systems installed on school buses and stop arms to capture, document, and fine drivers who illegally passed stopped school buses ("Stop Arm Camera Program").  FMS helped facilitate DCS's purchase of the camera systems for the Stop Arm Camera Program through a complicated web of suppliers and financiers.  Financial difficulties that sprang from the Stop Arm Camera Program led to a failed land deal and, ultimately, to a November 2017 voter referendum to shutter DCS.

---

[1] Plaintiff's Petition is drafted as having two causes of action, but the only substantive claim is alleged misappropriation of trade secrets under the Texas Uniform Trade Secrets Act.  (Petition at 7–8.)  The other "cause of action" is a request for injunctive relief.  Because ATS moves to dismiss the only substantive cause of action in Plaintiff's Petition, it does not file an Answer at this time pursuant to Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure.

As reports of the shortcomings of DCS's deal with FMS were surfacing in the summer of 2017, a group of companies affiliated with FMS allegedly sold technology to Plaintiff BusPatrol. (Petition at 4.[2])  BusPatrol alleges that the technology it purchased from FMS was "BusStop Technology."  (*Id.* at 4 n.2.)  BusPatrol further alleges that its BusStop Technology relates to its so-called "smart bus" program whereby BusPatrol provides (i) interior bus cameras to record actions taken by the bus driver and students at all times and (ii) exterior cameras to record bus stop arm violators who pass busses when the stop arm is extended and the red stop lights are flashing.  (*Id.* at 3–4.)  BusPatrol alleges that ATS is BusPatrol's "main" and "major" competitor in the smart bus technology field.  (*Id.* at 1, 5.)

Recently, the Dissolution Committee for the Former Board of Dallas County School Trustees (the "Dissolution Committee") announced that it was accepting proposals for the purchase of assets and contractual interests for the Stop Arm Camera Program.  (Dkt. No. 5-1 at 84–92.)  Upon learning that ATS was communicating with the Dissolution Committee to prepare and submit a responsive bid, BusPatrol raced to the District Court of Dallas County, Texas ("State Court") with its present Petition.  (Petition at 1.)  BusPatrol sought and obtained an *ex parte* Temporary Restraining Order from the State Court based on its allegations of trade secret misappropriation.[3]  (Dkt. No. 1-13.)  BusPatrol's actions appeared designed to impede ATS's ability to negotiate and communicate with the Dissolution Committee and, presumably, allow BusPatrol an opportunity to win the bid for itself.  In short:

---

[2] BusPatrol's Original Verified Petition and Application for Temporary Restraining Order and Injunctive Relief was filed in the District Court of Dallas County, Texas, 95th Judicial District on April 13, 2018 prior to removal of this cause of action.  The Petition can be found on this Court's docket as Exhibit 2 to the Index of State Court Documents that accompanied Defendant ATS's Notice of Removal.  (Dkt. No. 1-5.)

[3] Following removal, this Court dissolved the State Court *ex parte* Temporary Restraining Order. (Dkt. No. 15.)

- FMS facilitated DCS's purchase of millions of dollars of equipment and technology;
- FMS allegedly transferred its assets to BusPatrol; and now
- BusPatrol seeks to buy back that same equipment for pennies on the dollar.

But BusPatrol's Petition is insufficient to state a claim for alleged trade secret misappropriation. Simply put, BusPatrol has not identified any allegedly misappropriated trade secret(s) with any particularity. Instead, it merely lists generic and formulaic categories of information that *might* include or contain alleged trade secrets. For example, BusPatrol alleges that:

> BusPatrol's confidential information and trade secrets include proprietary equipment and software that makes up the Busguard System and the ONGO transit system, designs, engineering plans, software structure and architecture, software code, engineering plans, know-how, technical knowledge of what processes work and what does not, lists of components needed to make the system work, processes, maintenance data, procedures, processes and instructions, operating systems, technical or engineering information, designs, plans, compilations, program devices, programs, methods, techniques, processes, and supplier information (collectively the "Trade Secrets").

(Petition at 3.) This laundry list generates more questions than answers. What "compilations," "plans," "methods," "techniques," or "procedures?" What are "processes and instructions," and how do they differ from "processes?" And why are "designs," "engineering plans," and "processes" listed twice each in BusPatrol's rote recitation of information?

BusPatrol does not (i) identify any specific allegedly proprietary or confidential trade secret(s) that ATS allegedly misappropriated, (ii) explain how any information or knowledge ATS allegedly acquired differs from information in the public domain, (iii) explain how DCS, the Dissolution Committee, or both were obligated not to disclose any information or knowledge that they allegedly disclosed to ATS, or (iv) identify the information that ATS allegedly acquired from DCS, the Dissolution Committee, or any other source that is a protectable trade secret.

3

## LEGAL STANDARD

Although the Court must accept factual allegations as true when evaluating a motion to dismiss for failure to state a claim, the Court may disregard "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." *See, e.g.*, *Abrams Shell v. Shell Oil Co.*, 343 F.3d 482, 486 (5th Cir. 2003) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).  The Court should not maintain a petition that fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**ARGUMENT**

I.   **Plaintiff Must Identify its Alleged Trade Secret(s) With Sufficient Particularity to Give ATS Notice of the Claim.**

The Texas Uniform Trade Secrets Act ("TUTSA") lists a number of types of information that *might* contain or include trade secrets under appropriate circumstances, "including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers . . . ."  Civ. Prac. & Rem. § 134A.002(6).   But merely invoking those magic words, as BusPatrol does here, is insufficient to meet Rule 8's pleading standard.   As the Supreme Court has held, "'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).   BusPatrol's generic laundry list includes more than half of the types of potential trade secrets included in the statute, sometimes more than once.   That is the very definition of "a formulaic recitation" and does not satisfy *Iqbal* and *Twombly*.

In *StoneEagle Servs., Inc. v. Valentine*, the court addressed a motion for more definite statement of trade secrets under Fed. R. Civ. P. 16, and described several types of trade secret allegations that do not satisfy the "reasonable particularity" standard, namely: (1) laundry list of general categories, (2) lengthy, descriptive, but non-specific paragraphs, (3) generally listing software, algorithms, and processes that a plaintiff developed, (4) disclosures that only reveal the end results of, or functions performed by, the claimed trade secrets, or (5) concepts, elements, or components that make up designs.   No. 3:12-cv-1687-P, 2013 WL 9554563, at *4 (N.D. Tex. June 5, 2013); *see also Dura Global Tech., Inc. v. Magna Donnelly Corp.*, No. 07-CV-10945, 2007 WL 4303294, at *4 (E.D. Mich. Dec. 7, 2007) (finding that plaintiff's "list of general categories" of information failed to identify trade secrets with particularity).

BusPatrol's allegations fail each of the *StoneEagle* tests using almost the same words and logic. *First*, BusPatrol's list of alleged trade secret information includes a mere laundry list of general categories, like "compilations," "plans," "methods," "techniques," and "procedures." *Second*, BusPatrol's 82-word block of text comprised of approximately twenty-four types of information is lengthy, but non-specific. *Third*, BusPatrol generally listed "software code," "processes" (twice), and "BusPatrol's confidential information." *Fourth*, BusPatrol identifies certain information allegedly "needed to make the system work." *Fifth*, BusPatrol not only lists "designs," but "plans," "compilations," "program devices," "programs," "methods," "techniques," and "processes" which may or may not be part of its "designs." These alleged information categories are not trade secrets. BusPatrol's allegations describe categories of technologies and concepts within which trade secrets may or may not exist. Courts reject trade secret allegations with similar wording.

For example, in *Pension Advisory Group, Ltd. v. Country Life Insurance Co.*, the Plaintiffs alleged misappropriation of trade secrets under Texas common law.[4] 771 F. Supp. 2d 680, 691, 701 (S.D. Tex. 2011). "The trade secrets allegedly disclosed [in *Pension Advisory Group*] included customer lists, customer relationships, customer data, and competitive knowledge of insurance regulations and processing." *Id.* at 690. The court granted defendant's motion to dismiss because the plaintiffs failed to "fully identif[y] the specific trade secret they claim to have been stolen . . . ." *Id.* at 701; *see also Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, No. H-11-1420, 2012 WL 43366, at *11 (S.D. Tex. Jan. 9, 2012) (dismissing misappropriation of trade secrets claim because plaintiff "failed to identify the specific trade secret information it

---

[4] The TUTSA, which is the basis for BusPatrol's claim, "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Civ. Prac. & Rem. § 134A.007(a). Nonetheless, the pleading standards announced in pre-TUTSA cases are still instructive.

claims has been misappropriated"); *Bioquell, Inc. v. Feinstein*, No. 10-2205, 2010 WL 4751709, at *6 (E.D. Pa. Nov. 23, 2010) (dismissing misappropriation of trade secrets claim on grounds that the complaint failed to "identify the[] trade secrets" and was, instead, "merely a string of conclusory statements devoid of any factual basis") (citing *Twombly*, 550 U.S. at 570).

Similarly, in *Medafor, Inc. v. Starch Medical, Inc.*, the plaintiff described the alleged trade secrets at issue as "business methodologies, formulas, devices, and compilations of information, including suppliers and customers . . . ."   No. 09-CV-0441 PJS/FLN, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009).  The court found the description "so broad as to be meaningless." *Id.*  Accordingly, the court granted the defendant's motion to dismiss. *Id.* at *2; *see also AutoMed Tech., Inc. v. Eller*, 160 F. Supp. 2d 915, 925–26 (N.D. Ill. 2001) (finding that plaintiff's list of generalities such as "software, designs, and research" and high-level references to the names of three research projects failed to identify trade secrets with sufficient particularity); *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) (finding that plaintiff's use of phrases such as "manufacturing process information" and "detailed drawings" failed to identify trade secrets with sufficient particularity).

Early identification of trade secrets is important because a defendant only has fair notice of a trade secret misappropriation claim, and can only begin preparing its defenses, if the plaintiff identifies those alleged trade secrets with particularity.  Indeed, many potential defenses to a trade secret claim—e.g., that the accused party did not actually receive the information from the complaining party, that the accused party did not misuse the information, that the accused party had already developed the same information independently, or that the information is not secret—depend on the accused party having adequate notice of what the plaintiff accuses it of misappropriating.  *See, e.g., Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 3:12CV220

(WWE), 2012 WL 3113162, at *1 (D. Conn. July 31, 2012) ("early identification of the trade

secrets . . . permits defendant to mount a defense"); *Switch Comm. Grp. v. Ballard*, No. 2:11-cv-

00285-KJD-GWF, 2012 WL 2342929, at *4–5 (D. Nev. June 19, 2012); ("it is difficult for a

defendant to mount a defense until it has some indication of the trade secrets allegedly

misappropriated") (citing *DeRubeis v. Witten Tech., Inc.*, 244 F.R.D. 676, 680–81 (N.D. Ga.

2007)); *DeRubeis*, 244 F.R.D. at 681 ("Until the defendant knows what information is at issue, it

cannot attempt to rebut the plaintiff's charges of misappropriation.").  This rule exists because,

unlike other types of intellectual property claims, such as those over patents and copyrights, no

government-registered document discloses the information at issue with particularity to shed

light for a trade secret defendant.

Requiring identification of trade secrets at the outset of the case avoids a situation in

which the plaintiff does not have valid claims, but instead molds its claims around whatever it

finds in the defendant's discovery in order to prolong the case.  *See Powerweb*, 2012 WL

3113162, at *1 ("early identification of the trade secrets . . . prevents frivolous lawsuits" by

preventing the plaintiff from tailoring its trade secret claims to the defendant's discovery);

*DeRubeis*, 244 F.R.D. at 681 (same).  Unless BusPatrol identifies its trade secrets, the Court and

the parties lack sufficient information to set an appropriate scope of discovery and to determine

whether particular discovery disputes fall within that scope.  *See Applied Materials, Inc. v.*

*Advanced Micro-Fabrication Equip. (Shanghai) Co.*, No. C 07-5248 JW (PVT), 2008 WL

183520, at *1 (N.D. Cal. Jan. 18, 2008); *Switch Comm. Grp.*, 2012 WL 2342929 at *4;

*DeRubeis*, 244 F.R.D. at 680–81.

## II.   Alternatively, the Court Should Order Plaintiff to Provide a More Definite Statement and/or Identify its Alleged Trade Secrets with Reasonable Particularity.

There is a growing consensus that trade secret plaintiffs should disclose the allegedly misappropriated trade secret(s) with reasonable particularity early in a case.   *StoneEagle*, 2013 WL 9554563, at *2 (collecting cases).   If the Court does not to dismiss Plaintiff's petition given its failure to sufficiently identify any allegedly misappropriated trade secret(s), the Court should require Plaintiff to submit a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.   *See, e.g.*, *Metis Int'l, L.L.C. v. Ace INA Holdings, Inc.*, No. SA04CA-1033-XR, 2005 WL 1072587, at *5 (W.D. Tex. May 6, 2005) (granting Rule 12(e) motion requiring plaintiff to plead more about the categories of alleged secrets being claimed).

Rule 16(c)(2)(L) also permits the Court to order Plaintiff to identify the alleged trade secret(s) at issue with reasonable particularity.   Pursuant to that rule, the Court may "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems . . . ."   Fed. R. Civ. P. 16(c)(2)(L).   Rule 16 was the basis for the decisions in *StoneEagle*, 2013 WL 9554563 and *United Servs. Auto. Assoc. v. Mitek Sys., Inc.*, 289 F.R.D. 244, 249 (W.D. Tex. Feb. 15, 2013).   Indeed, the *Mitek* court found that Rule 16 provided it with "***broad discretion***" to require an early and particular identification of alleged trade secret(s) at issue.   289 F.R.D. at 248 (emphasis in original).   Pre-discovery identification of trade secrets (1) allows "well-investigated claims to proceed while discouraging meritless trade secret claims . . .;" (2) "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope;" (3) "provides defendants with an equal playing field, allowing them ample time and opportunity to develop their defense;" and (4) "allows the [c]ourt to utilize its resources more effectively by exposing the viable claims, permitting early dismissal of the

nonviable claims, and allowing the case to proceed unfettered by needless discovery disputes pertaining to unquestionably relevant information central to the parties' claims and/or defenses." *Id.* at 248–49.  Each of these rationales weighs heavily in favor of requiring Plaintiff to identify any alleged trade secret(s) at issue in this case with reasonable particularity early in the case. Indeed, Plaintiff's request for a preliminary injunction is yet another reason why early identification of any alleged trade secret(s) at issue is important, so the Court and the parties can evaluate Plaintiff's preliminary request for equitable relief.

## CONCLUSION

For the foregoing reasons, Defendant American Traffic Solutions, Inc. respectfully requests that this Court grant the instant motion and all relief to which American Traffic Solutions, Inc. is justly entitled.


Dated: May 7, 2018                                  Respectfully submitted,

                                                    */s/ Phillip B. Philbin*
                                                    Phillip B. Philbin
                                                    LEAD ATTORNEY
                                                    State Bar No. 15909020
                                                    Michael D. Karson
                                                    State Bar No. 24090198
                                                    **HAYNES AND BOONE, LLP**
                                                    2323 Victory Avenue
                                                    Suite 700
                                                    Dallas, Texas 75219
                                                    Tel.: (214) 651-5000
                                                    Fax: (214) 651-5940
                                                    Email: phillip.philbin@haynesboone.com
                                                           michael.karson@haynesboone.com

                                                    *Attorneys for Defendant*
                                                    *American Traffic Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 7, 2018, I electronically submitted the foregoing document with the clerk of court for the United States District Court for the Northern District of Texas, using the electronic case files system of the Court.  I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


*/s/ Phillip B. Philbin*
Phillip B. Philbin